UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES M. GROGAN,<br><br>        Plaintiff,<br><br>   v.<br><br>UNITED STATES OF AMERICA; and DOES 1-30,<br><br>        Defendants. | No.  2:15-cv-00562-JAM-KJN<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |

    Plaintiff James M. Grogan ("Plaintiff") sued Defendant United States of America (the "United States") to recover for injury allegedly sustained when the aircraft he was flying lost power and crashed.  The United States seeks to dismiss Plaintiff's Second Amended Complaint (SAC), contending Plaintiff expressly waived his right to sue.[1]  For the following reasons, the United States' motion is DENIED.

    I.    FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

    On or about January 19, 2013, Plaintiff was piloting an

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for May 17, 2016.

1

aircraft provided to him by Beale Aero Club.  SAC ¶¶ 8-9.  Beale Aero Club is a non-appropriated fund instrumentality of the United States.  Id. ¶¶ 8, 21.  Plaintiff alleges that the aircraft "lost power and crashed to the ground, thereby causing serious injury to Plaintiff."  Id. ¶ 9.

Subsequently, Plaintiff filed a personal injury complaint against, *inter alia*, the United States.  In his SAC (Doc. #36), Plaintiff seeks to hold the United States liable for the manner in which it "owned, operated, repaired, overhauled, inspected, maintained, modified, altered, and/or was otherwise responsible for the airworthiness of" the aircraft, and for breach of express and implied warranties of airworthiness.

The United States has moved to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6) (Doc. #43).  Plaintiff opposes (Doc. #53), and the United States has replied (Doc. #54).

## II.   OPINION

### A.   Judicial Notice

The United States requests that the Court consider three agreements entitled "Covenant Not to Sue and Indemnity Agreement" (the "Covenants") that Plaintiff executed in May of 2010, 2011, and 2012 (Doc. #44-1).  Mem. of P. & A. ISO Mot. to Dismiss ("Mot.") (Doc. #44) 6:12–22.

Generally, the Court may not consider material beyond the pleadings in ruling on a motion to dismiss under Rule 12(b)(6). Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).  The exceptions are "situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the

2

document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." Id.

Plaintiff does not allude to the Covenants in the body of his SAC, but his "claim depends on the contents of" the Covenants, id., because he "would have no valid claims unless the [Covenants] did not bar them," Birdsong v. AT & T Corp., No. C12-6175 TEH, 2013 WL 1120783, at *2 (N.D. Cal. Mar. 18, 2013). The United States attached the Covenants signed by Plaintiff to its motion to dismiss. Although Plaintiff argues in his opposition that the Covenants are unenforceable, he does not dispute the Covenants' authenticity or the fact that he signed them.

The Court considers the Covenants attached to the United States' motion to dismiss under the incorporation by reference doctrine.

B. Analysis

The United States argues that all of Plaintiff's causes of action are barred by the Covenants because the Covenants relieve the United States of a legal duty to Plaintiff. Mot. 6:28. The Covenants state in pertinent part:

> I . . . am about to voluntarily participate in various activities, including flying activities, of the Beale Aero Club as a pilot, student pilot, copilot, instructor, or passenger. In consideration of the Aero Club permitting me to participate in these activities, I, for myself . . . hereby covenant and agree that I will never institute, prosecute, or in any way aid in the institution or prosecution of, any demand, claim, or suit against the US Government for any destruction, loss, damage, or injury (*including death*) to my person or property which may occur from any cause whatsoever as a result of my participation in the activities of the Aero Club. . . .

3

>I know, understand, and agree that I am freely assuming the risk of my personal injury, death, or property damage, loss or destruction that may result while participating in Aero Club activities, including such injuries, death, damage, loss or destruction as may be caused by the negligence of the US Government.

Ex. 1. The United States contends that the Covenants are sufficiently clear and unambiguous, do not contravene public policy, and are enforceable. E.g., Mot. 8:3, 11:14-17. Plaintiff counters in pertinent part that the Covenants are contrary to public policy. Pl.'s Opp'n to Mot. ("Opp'n") 8:10-13.

The California Supreme Court has held that for "an express assumption of risk agreement" to relieve defendant of a legal duty to plaintiff, the agreement may not violate public policy. Knight v. Jewett, 3 Cal. 4th 296, 308 n.4 (1992). "[N]o public policy opposes private, voluntary transactions in which one party, for a consideration, agrees to shoulder a risk which the law would otherwise have placed upon the other party. . . ." Tunkl v. Regents of Univ. of Cal., 60 Cal. 2d 92, 101 (1963). A release or waiver agreement that is invalid for public policy reasons "exhibits some or all of the following characteristics" or factors:

>It concerns a business of a type generally thought suitable for public regulation. The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public. The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards. As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public

4

|   |   |
|---|---|
| 1 | who seeks his services.  In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence.  Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents. |

Id. at 98-101 (footnotes omitted).

"[T]he question of whether a general release 'affects the public interest, and is thus void as a matter of public policy, requires analysis of the transaction giving rise to the contract. . . .'"  Booth v. Santa Barbara Biplanes, LLC, 158 Cal.App.4th 1173, 1178 (2008) (quoting Gavin W. v. YMCA of Metro. Los Angeles, 106 Cal.App.4th 662, 670 (2003)).  "Whether the activity affects the public interest is objectively determined." Id. at 1179.

The parties dispute whether "flying activities" at Beale Aero Club affect the public interest.  The United States argues: "[E]xculpatory agreements in the recreational sports context do not implicate the public interest."  Allan v. Snow Summit, Inc., 51 Cal.App.4th 1358, 1373 (1996).  Applying this principle, it contends "[o]perating a single-engine airplane is a flying activity" that does not implicate the public interest, Mot. 14:20–23, and cites a number of cases in the recreational sports context.  For example, it cites Booth, where on appeal from summary judgment in favor of respondents, the court explained that "[r]ecreational activities such as snow skiing or parachute jumping are not essential services or necessities affecting the public," and similarly held a release which tourists signed before an aerial sightseeing tour was not void as a matter of

5

public policy, in part because aerial sightseeing tours are not an essential service or necessity affecting the public interest. 158 Cal.App.4th at 1179. The court reasoned that although "common carriers provide an important public service," respondents provided a non-essential service—"aerial sightseeing tours of Santa Barbara"—which is unlike "an air carrier transporting passengers for compensation between points within th[e] state." Id. (internal quotation marks omitted); Hulsey v. Elsinore Parachute Ctr., 168 Cal.App.3d 333, 342–43 (1985) (affirming summary judgment for defendant and finding parachute jumping is not an essential service or necessity affecting the public interest).

Plaintiff challenges the United States' arguments by likening Beale Aero Club to "an airplane repair facility," which also provides "aviation training and rentals." Opp'n 8:19–26, 9:27–10:2. He cites Gardner v. Downtown Porsche Audi, 180 Cal. App. 3d 713, 720 (1986), where the appellate court, in affirming the trial court judgment, held that a car repair service is deemed to "affect the public interest," and therefore, the car repair service's attempt to disclaim liability via a contractual waiver was void on public policy grounds. In response to Plaintiff's contentions, the United States argues that "Plaintiff pursued recreational flying through a military base's Aero Club." Reply Mem. ISO Mot. 4:5–8.

Here, the Covenants state Plaintiff assumed the risk of participating in "flying activities." Ex. 1. Although the United States defines "flying activities" as a recreational activity in its dismissal motion, there is no evidence at this

early stage of the proceedings to support this definition, or explain the services provided by Beale Aero Club.  Nor does the Complaint elaborate on Beale Aero Club's services or the activity Plaintiff engaged in when the aircraft crashed.  Instead, Plaintiff simply alleges that he "was piloting aircraft Cessna 172," SAC ¶ 9, "provided to him by Beale Aero Club," id. ¶ 8, without explaining why he was piloting the aircraft or why Beale Aero Club provided the aircraft.  Contrary to the United States' assertion, Plaintiff does not allege he pursued "recreational" flying when piloting the aircraft. As such, the Court lacks sufficient information to assess the Tunkl factors.

The Court must therefore deny the United States' request that the Court find as a matter of law that "flying activities" at Beale Aero Club do not affect the public interest, notwithstanding the important policies that have led courts to enforce release or waiver agreements in the recreational sports context.  See Nat'l & Int'l Bhd. of St. Racers, Inc. v. Superior Court, 215 Cal.App.3d 934, 938 (1989) ("Unless courts are willing to dismiss such actions without trial, many popular and lawful recreational activities are destined for extinction.").  The Court need not, and does not, reach the parties' further disagreements concerning whether California Civil Code section 1668[2] invalidates the Covenants, and whether Plaintiff's allegations of gross negligence and recklessness render the

---

[2] Section 1668 provides: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."  Cal. Civ. Code § 1668.

Covenants unenforceable as to those causes of action.

### III.  ORDER

For the reasons set forth above, the Court DENIES the United States' motion to dismiss.

IT IS SO ORDERED.

Dated:  June 2, 2016

*/s/ John A. Mendez*
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE