CHAD A. READLER
Principal Deputy Assistant Attorney General, Civil Division
PHILLIP A. TALBERT
United States Attorney
GREGORY T. BRODERICK
Assistant United States Attorney
DEBRA D. FOWLER
debra.fowler@usdoj.gov
Senior Aviation Counsel
WILLIAM D. ADAMS
william.d.adams@usdoj.gov
Trial Attorney
Torts Branch, Civil Division
U.S. Department of Justice
Post Office Box 14271
Washington, DC 20044-4271
Phone: (202) 616-4025
Fax: (202) 616-4002
Attorneys for Defendant United States of America

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| James M. Grogan,<br><br>        Plaintiff,<br><br>v.<br><br>United States of America,<br><br>        Defendant. | No. 2:15-CV-00562-JAM-KJN<br><br>**DEFENDANT UNITED STATES OF AMERICA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>**Date:** January 30, 2018<br>**Time:** 1:30 p.m.<br>**Location:** Courtroom 6<br>**Judge:** John A. Mendez<br><br>**ORAL ARGUMENT REQUESTED** |

## I. INTRODUCTION

Plaintiff James M. Grogan sued Defendant United States under the Federal Torts Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2401(b), 2671-2680, for injuries he blames on a January 19,

MEMORANDUM SUPPORTING
MOTION TO DISMISS                              -1-

2013 aircraft accident. The Court lacks subject matter jurisdiction under *Feres v. United States*, 340 U.S. 135, 140 (1950), because Grogan's injuries were incident to his military service.

## II.  STATEMENT OF FACTS

1.  On January 19, 2013, Grogan was an active-duty pilot in the United States Air Force. Declaration of Debra D. Fowler in Support of United States' Motion to Dismiss (Fowler Decl.), ¶ 3 (Exh. B at 5 (Answer to Interrog. No. 8)); ¶ 4 (Exh. C at 34:14-35:5, 301:13-301:15).[1]

2.  Beale Aero Club (BAC) is an Air Force Morale, Welfare and Recreation (MWR) program, a non-appropriated fund instrumentality of the United States serving a dual purpose: (a) to "promote morale" by giving members an opportunity to, among other things, "[s]upport the Air Force mission," "[p]articipate in professional aviation training programs," "[e]njoy safe, low-cost aircraft operations," and "[d]evelop and maintain aeronautical skills;" and (b) to "support the United States Air Force Survival, Recovery, and Reconstitution Plan, search and recovery operations, and other operational missions." Fowler Decl., ¶ 4 (Exh. C at 109:10-109:16, 110:9-110:17); ¶ 7 (Exh. F, ¶ 7); ¶ 8 (Exh. G at 7:24-8:6); ¶ 9 (Exh. H at 1.2-1.2.1).

3.  The Headquarters for United States Air Force Services (HQ USAF/SV) establishes Air Force aero club policies. Fowler Decl., ¶ 9 (Exh. H at 4.1). Headquarters for the Air Force Services Agency (HQ AFSVA) trains aero club managers. *Id.* at 4.2.

4.  BAC operates within the Air Force command structure, under the Mission Support and Operational Groups at Beale Air Force Base and the Wing Commander's supervision. Fowler Decl., ¶ 8 (Exh. G at 6:6-6:20, 7:24-8:17, 10:11-11:12); ¶ 9 (Exh. H at Ch. 4).

---

[1] Grogan's Answer to Interrogatory 8 mistakenly states that he began working for the FAA on January 12, 2013. His cited testimony correctly states that he was not discharged from the Air Force until October 2013.

5. The Wing (or, Installation) Commander: (a) controls access to all base activities, including BAC (Fowler Decl., ¶ 8 (Exh. G at 6:6-6:20, 7:24-8:17, 10:11-11:12)); and (b) may revoke Club privileges for "negligence [or] willful misconduct." Fowler Decl., ¶ 9 (Exh. H. at 4.6).

6. The base Services Commander "[r]emoves from flying activities or aircraft maintenance any employee or contractor who demonstrates, or is suspected of, negligent acts [or] willful misconduct . . . and investigates and takes appropriate action" and also "[s]upervises the aero club manager." Fowler Decl., ¶ 9 (Exh. H 4.7.1).

7. The Club was governed by Air Force Instruction (AFI) 34-217 and established under Air Force Manual (AFMAN) 34-232, *Aero Club Operations*, both of which require mandatory compliance. Fowler Decl., ¶ 9 (Exh. H at 1.1); ¶ 10 (Exh. I).

8. AFI 34-217 applied to commanders at each echelon, aero club personnel and members, and required them to comply with applicable Air Force Policy Directives and Instructions, AFMAN 34-232, Federal Aviation Regulations (FARs), and National Transportation Safety Board (NTSB) statutes. Fowler Decl., ¶ 9 (Exh. H at 1.1).

9. The Air Force investigates accidents or mishaps that occur in connection with BAC activities and disciplines accordingly. Fowler Decl., ¶ 9 (Exh. H at 3.4, 4.6); ¶ 10 (Exh. I at 4.5).

10. Grogan was a BAC flight instructor and member, and once served as the Club's Air Force Operations Advisor. Fowler Decl., ¶ 1 (Exh. A); ¶ 4 (Exh. C at 110:22-112:12, 117:14-118:23, 259:24-261:4); ¶ 5 (Exh. D); ¶ 6 (Exh. E); ¶ 8 (Exh. G at 11:19-12:25).

11. Grogan was required to adhere to Air Force directives governing BAC while piloting the Club's aircraft. Fowler Decl., ¶ 10 (Exh. I at 4.5).

12. The Beale AFB Services Commander supervised the Club's manager and was responsible for removing from flying activity or aircraft maintenance any employee or contractor suspected of negligent acts.  Fowler Decl., ¶ 9 (Exh. H at 4.7).

13. At the time of the accident, Connie Shupe was the Club's manager.  Fowler Decl., ¶ 11 (Exh. J at 14:15-14:23, 22:24-22:25).

14. John Henry was a certificated aircraft mechanic under contract to inspect and maintain the Club's aircraft.  Maintenance was performed in the Club's hangar at Beale AFB.  Fowler Decl., ¶ 11 (Exh. J at 21:15-22:3); ¶ 12 (Exh. K at 38:12-39:8, 70:8-71:12, 155:12-158:23); ¶ 13 (Exh. L).

15. As part of an annual inspection of the accident aircraft, John Henry followed a checklist requiring him to remove the fuel selector handle and put it back on the accident aircraft.  Fowler Decl., ¶ 12 (Exh. K at 83:10-85:22, 93:4-94:22, 108:12-108:19); ¶ 14 (Exh. M); ¶ 15 (Exh. N).

16. John Henry reinstalled the fuel selector handle on the accident aircraft on January 18, 2013 at the BAC hangar and signed off on the aircraft as being airworthy.  Fowler Decl., ¶ 12 (Exh. K at 108:12-108:19, 162:22-162:25, 163:20-163:25, 180:5-180:20).

17. Before he flew the accident aircraft on January 19, 2013, Grogan had been using another BAC aircraft to give incentive rides to Air Force airmen as a kind of marketing activity for the club.  Fowler Decl., ¶ 4 (Exh. C at 118:24-119:11, 159:14-159:25).

18. Grogan flew from Marysville, California, to Beale AFB with Club member Caillen Owens, a student pilot, to deliver the incentive ride aircraft to the Club hangar for maintenance.  Fowler Decl., ¶ 4 (Exh. C at 118:24-120:20, 160:11-160:23, 162:9-163:25, 275:2-280:8); ¶ 16 (Exh. O at 1).

MEMORANDUM SUPPORTING
MOTION TO DISMISS                               -4-

19. At Beale AFB, Grogan retrieved the accident aircraft to reposition it to Marysville so Club members could fly it.  Fowler Decl., ¶ 4 (Exh. C at 120:19-122:8); ¶ 16 (Exh. O at 1).

20. After filing a military flight plan, Grogan and Owens departed in the accident aircraft to fly from Beale AFB to Marysville.  Fowler Decl., ¶ 4 (Exh. C at 177:19-178:1, 179:15-179:18, 186:9-186:24); ¶ 16 (Exh. O at 1).

21. During the flight, shortly after a touch-and-go maneuver, the accident aircraft crash-landed at Marysville while Grogan was piloting it.  Fowler Decl., ¶ 4 (Exh. C at 196:20-202:5, 203:2-204:17, 205:2-205:10, 207:10-210:11); ¶ 7 (Exh. F at ¶ 8).

22. Grogan claims the accident occurred because John Henry installed the fuel selector handle improperly, so that when Grogan placed the fuel selector handle in the "both" position, which normally would cause fuel to flow to the engine from both fuel tanks, he actually selected the "off" position, which stopped the flow of fuel and caused the engine to quit unexpectedly in midair.  Fowler Decl., ¶ 4 (Exh. C at 205:2-208:8, 266:21-270:17); ¶ 7 (Exh. F at ¶¶ 11-12); ¶ 12 (Exh. K at 147:17-150:11).

23. Grogan was required to hold a valid pilot certificate issued by the Federal Aviation Administration (FAA) and a valid FAA medical certificate to pilot the accident aircraft.  Fowler Decl., ¶ 10 (Exh. I at 3.6); 14 C.F.R. §§ 61.3(a), 61.23(a)(2) & (a)(3)(i) (2012).

24. On April 27, 2010, the FAA issued Grogan a Second Class medical certificate.  Because he was over 40 on his medical examination date, that medical certificate expired on April 30, 2012. Thus, although Grogan held an FAA pilot certificate at the time of the accident, he did not hold a valid FAA medical certificate.  Fowler Decl., ¶ 17 (Exh. P); 14 C.F.R. § 61.23(d)(2)(iii) (2012).

25. Under the circumstances, however, the FARs provide an exemption from the medical certificate requirement for military pilots with an up-to-date U.S. Armed Forces medical

MEMORANDUM SUPPORTING
MOTION TO DISMISS                           -5-

examination authorizing pilot flight status.  In the Air Force, this is a Form 1042.  Fowler Decl., ¶ 4 (Exh. C at 126:10-126:24); 14 C.F.R. §§ 61.3(c)(1) & (2)(xii), 61.23(b)(9)(i) & (ii) (2012).

26. Because his FAA medical certificate was expired, Grogan was relying on his Air Force Form 1042 to satisfy the medical certificate requirement to operate the accident aircraft on the day of the accident.  Fowler Decl., ¶ 4 (Exh. C at 129:17-130:10).

## III.   ARGUMENT

### A.  Motion to Dismiss Standard

The United States may be sued only where it has expressly consented to suit by statute. *Block v. North Dakota*, 461 U.S. 273, 287 (1983).    The FTCA is a limited waiver of that sovereign immunity for tort claims arising out of the conduct of government employees acting in the scope of their employment.  28 U.S.C. § 1346(b)(1).   Whether the United States has waived sovereign immunity is a question of subject matter jurisdiction.  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).  A Fed. R. Civ. P. 12(b)(1) dismissal motion is the way to challenge subject matter jurisdiction.  *Tobar v. United States*, 639 F.3d 1191, 1195 n.1 (9th Cir. 2011) (citing *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)).  "A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction . . . may be made at any time."  *In re Apple Iphone Antitrust Litigation*, 846 F.3d 313, 319 (9th Cir. 2017); *see also Jackson v. United States*, 110 F.3d 1484, 1486 (9th Cir. 1997) (a motion to dismiss under *Feres* is treated as a Rule 12(b)(1) motion, even if it is raised after the answer).

This motion is a factual attack on jurisdiction, and as such the Court may consider affidavits and evidence beyond the complaint.  *Savage* 343 F.3d at 1039 n.2.  The party seeking to invoke jurisdiction must establish it exists.  *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986).    If the movant effectively challenges allegations of jurisdictional facts, the opposing

party "cannot rest on the mere assertion that factual issues can exist." *Trentacosta v. Frontier Pac. Aircraft Ind., Inc.*, 813 F.2d 1553, 1558 (9th Cir. 1987) (citation omitted). The court must dismiss if it determines it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

### B. The Court Lacks Subject Matter Jurisdiction under the *Feres* Doctrine.

Grogan was an active duty member of the Air Force who was injured while engaged in flying activity with BAC, a recreational flying club at Beale AFB and under Air Force command. Fact Nos. 1-7, 19-21. Because he was injured while performing an activity incident to his military service, his claim against the United States is barred.

The United States has sovereign immunity from claims by military members when their alleged injuries "[arose] out of, or are in the course of activity incident to service." *Feres*, 340 U.S. at 146. The *Feres* doctrine is a "broad exception" to the FTCA. *McConnell v. United* States, 478 F.3d 1092, 1095 (9th Cir. 2007) (quoting *Costo v. United States*, 248 F.3d 863, 866 (9th Cir. 2001)). Preventing intrusion into military discipline is the crucial policy reason for *Feres*. *United States v. Brown*, 348 U.S. 110, 112 (1954); *see also McConnell*, 478 F.3d at 1095 ("preserving the integrity of military discipline" is the "most robust explanation for the *Feres* doctrine").

Courts consider four factors to determine whether there is jurisdiction over a service member's FTCA claim: 1) the nature of the plaintiff's activities at the time of the negligent act; 2) the place where the negligent act occurred; 3) the plaintiff's duty status when the negligent act occurred; and 4) the benefits accruing to the plaintiff because of his status as a service member. *Costo*, 248 F.3d at 867. None of the four factors is dispositive; courts must consider them all and analyze them by means of factual comparison with prior cases. *Id*. The requirement that injuries arise from activities "[i]ncident to military service" encompasses a broad range of activities for military personnel. *See McConnell,* 478 F.3d at 1095. In addition to a member's assigned duties,

MEMORANDUM SUPPORTING
MOTION TO DISMISS                -7-

it also generally includes activities organized through military recreational facilities.  *Id.* at 1097-98.

The most instructive case is *McConnell*, in which an Air Force officer rented a motor boat from a recreation facility on Luke AFB.  *Id.* at 1093.  The base's 56th Services Squadron oversaw the recreation facility and used it to improve military readiness by promoting morale.  *See id.* at 1094 n.1.  A group of officers that included McConnell was briefed on the base's rules for using the boat and were required to follow them.  *Id.* at 1093.  While the group of officers were using the boat to water ski, its throttle jammed and it struck and killed McConnell.  *Id.* at 1093-94.  McConnell's parents sued the United States under the FTCA.  The district court granted the United States' dispositive motion, holding that it lacked subject matter jurisdiction under *Feres*.  *Id.*

On appeal, the Ninth Circuit applied the four factors and affirmed.  First, McConnell's activities were military in character because the military operated the recreation center to improve readiness.  *See id.* at 1097-98.  Second, the alleged negligent supervision and maintenance occurred on a military base.  *Id.* at 1096.  Third, McConnell enjoyed access to the recreation facility as a benefit of his military service.  *See id.* at 1096-97.  Fourth, although McConnell was subject to military discipline only inasmuch as all active duty members are subject to discipline while off-duty, his off-duty status did not outweigh the other factors to prevent a *Feres* bar.  *See id.* at 1096.  From this analysis, the Court held that the case could not have proceeded without requiring the trial court to review military regulations and decisions.  *Id.* at 1098.  The case against the United States was therefore barred under the *Feres* doctrine.  *Id.*

**1. Grogan's Activities at the Time of the Incident Were Military in Character.**

BAC is a Morale, Welfare and Recreation (MWR) program intended to improve morale in the fighting force and is therefore a military activity. Fact No. 2. At the time of the incident, the Club was specifically governed by AFI 34-217 and established according to the instruction of AFMAN 34-232. Fact No. 7. AFI 34-217 applied to commanders at each echelon, aero club personnel, and members, who were required to comply with applicable Air Force Policy Directives and Instructions, AFMAN 34-232, Federal Aviation Regulations (FARs), and National Transportation Safety Board (NTSB) statutes. Fact No. 8.

The purpose and intent of an MWR program like BAC is to promote morale by giving "eligible personnel an opportunity to support the Air Force mission; participate in professional aviation training programs; enjoy safe, low-cost aircraft operations; [and] develop and maintain aeronautical skills." Fact No. 2. Under Air Force rules, aero clubs also support various Air Force operational missions, including search and recovery operations. *Id.* Grogan furthered the mission of BAC in a number of ways. He was a member of the club; provided flight instruction for the club as a contract instructor; and once was appointed by the Wing Commander of Beale Air Force Base as the Operations Advisor to the Club. Fact No. 10. Activities supporting BAC are military in character because they contribute to the club's mission and benefit its military members. Fact No. 2.

Before he flew the accident aircraft on January 19, 2013, Grogan had been using another BAC aircraft to give incentive rides to Air Force airmen as a kind of Club marketing activity. Fact No. 17. After a maintenance issue arose, Grogan, accompanied by BAC member and student pilot Caillen Owens, flew the incentive ride aircraft to Beale Air Force Base to have the issue corrected. Fact No. 18. While at Beale, Grogan retrieved the accident aircraft to reposition it from Beale Air

Force Base to Marysville so Aero Club members could fly it. Fact No. 19. After filing a military flight plan, Grogan and Owens departed Beale AFB in the accident aircraft and crashed at Marysville. Fact Nos. 20-21. This evidence establishes that, at every step leading to the accident, Grogan was engaged in BAC flying activity for Club's benefit. In furthering the objectives of BAC, Grogan was involved in the military mission to improve morale in furtherance of the Club objectives as established by the Air Force. Fact No. 2.

Further supporting the military nature of the accident flight, Grogan relied on his status as an active duty Air Force pilot to satisfy the legal requirements to fly the accident aircraft. Under mandatory Air Force directives and Federal Aviation Regulations (FARs), Grogan was required to hold a valid pilot certificate issued by the Federal Aviation Administration (FAA) and a valid FAA medical certificate in order to pilot the accident aircraft. Fact No. 23; 14 C.F.R. §§ 61.3(c)(1), (2)(xii); 61.23(a)(2), (3)(i) (2012). Fact No. 23. On April 27, 2010 Grogan was issued a Second Class FAA Medical Certificate. Fact No. 24. Because he was over the age of 40, it was valid only until April 30, 2012. *Id*.; 14 C.F.R. § 61.23(d)(2)(iii) (2012).[2] Consequently, though Grogan held an FAA pilot certificate at the time of the accident, he did not hold a valid FAA medical certificate. Fact No. 24. Under the circumstances of the accident flight, however, the FARs provide an exemption from the FAA medical certificate requirement for military pilots with an up-to-date medical examination authorizing pilot flight status issued by the U.S. Armed Forces. 14 C.F.R. § 61.23(b)(9)(i) & (ii) (2012). In the Air Force, this medical certificate is known as a Form 1042. Fact No. 25. Because his FAA medical was expired, Grogan was relying on his Form 1042 to satisfy the medical certificate requirement to operate the accident aircraft on the day of the accident. Fact No. 26. Thus, according to Grogan, his participation in aero club

---

[2] Over the age of 40, the medical certificate expires on the last day of the 24th month of the date of the medical examination.

MEMORANDUM SUPPORTING
MOTION TO DISMISS                            -10-

flying activity on the date of the accident was solely based on his status as an active-duty military pilot. Grogan's activity at the time of the accident was military in character, which supports a bar of his claim under the *Feres* doctrine.[3]

### 2. The Alleged Negligent Acts Occurred on a Military Installation and Grogan's Claim Questions Military Decisions.

Grogan alleges that the aircraft's engine failed because John Henry, BAC's maintenance contractor, incorrectly installed the accident aircraft's fuel selector handle at Beale AFB and Club personnel at Beale AFB failed to inspect the aircraft to ensure it was operating safely. Facts No. 14-16, 22 & Fowler Decl.¶ 7 (Exh. F at 14-16, ¶¶ 11(a)-(i)). That the alleged negligent maintenance and inspection occurred on a military base further supports a bar of Grogan's claim under *Feres*. *See McConnell*, 478 F.3d at 1096 (the nearer the alleged negligent act occurred to a military installation, the more likely the claim is barred). In *McConnell*, it was irrelevant that the injury giving rise to the claim occurred outside of a military installation. The alleged negligent acts – ineffective supervision and maintenance of the boat – occurred at a military installation, and this weighed in favor of barring the claim. *See id*. This case is like *McConnell*. The allegedly negligent maintenance was performed by BAC contractor John Henry while the accident aircraft was in the maintenance hangar at Beale Air AFB. Fact Nos. 14-16. This aspect of the case strongly favors the application of *Feres*.

---

[3] "Incident to military service" encompasses a broad range of activities organized through military recreational facilities. *McConnell*, 478 F.3d at 1098; *see also Costo*, 248 F.3d at 867 (*Feres* barred the FTCA claims of sailors who drowned on a Navy-sponsored, recreational rafting trip); *Bon v. United States*, 802 F.2d 1092, 1094 (9th Cir. 1986) (*Feres* stopped a Navy sailor from suing the United States when she was injured in an accident involving a canoe rented from a recreational Naval Special Services Center); *Roush v. United States*, 752 F.2d 1460, 1464 (9th Cir. 1985) (where a Marine was injured by a bouncer at an on-base recreational club, the *Feres* bar would operate if the United States could show the club operated under military command, or the plaintiff or bouncer was subject to military discipline for violating club rules).

MEMORANDUM SUPPORTING
MOTION TO DISMISS                        -11-

More importantly, Grogan's allegations of negligent supervision and maintenance directly call into question military decisions regarding the establishment and operation of aero club programs generally, and BAC particularly. Should this case proceed to trial, the Court will necessarily review: Air Force regulations, such as AFI and AFMAN provisions concerning the establishment and operation of aero clubs; the choice of contract personnel to maintain the accident aircraft; and the hiring, training, and supervision of Connie Shupe as the manager of BAC, among other things. *See* Fact Nos. 2-9, 12-16. The then-Wing Commander at Beale has already been deposed in this matter and it is anticipated he will be called to testify if the case is tried. In *McConnell*, the Ninth Circuit upheld the district court's determination that these same factors support dismissal under *Feres*. *McConnell,* 478 F.3d at 1098. The same conclusion should be drawn here.

### 3. Grogan Was an Active Duty Service Member at the Time of the Incident and Subject to Military Discipline.

At the time of the incident, Grogan was an active-duty member of the United States Air Force. Fact No. 1. He was engaged in aero club activity controlled by military regulations and, unlike a civilian pilot or flight instructor, his activities were subject to military discipline and criminal penalties under the Uniform Code of Military Justice for violating those regulations. Fact No. 11; *see also* 10 U.S.C. § 892 (2012). This supports the conclusion that his claim against the United States is barred.

The Uniform Code of Military Justice (UCMJ) applies to all active duty military members, regardless of their leave or liberty status, and requires them to adhere at all times to the Code and the lawful orders of their superiors. 10 U.S.C. §§ 802(a)(1), 892. Whether a military member was on active duty when he was injured does not, however, resolve this factor decisively. For instance, in *Bon v. United States*, the *Feres* doctrine barred a Navy sailor's claim against the

United States for an injury she suffered while paddling a canoe she rented from a Navy recreation center.  802 F.2d 1092, 1096 (9th Cir. 1986).  The facility operated under Navy regulations, and the plaintiff could have been held criminally culpable under the military justice system for violating these regulations.  *See id*. at 1096.  This connection to military discipline was enough to establish that the boat rental was incident to the plaintiff's military service, and her claim was therefore barred.

For purposes of examining the "duty status" factor, Grogan's case resembles *Bon*.  BAC functioned under unique Air Force orders and regulations governing recreational flying clubs, and operated under the military command structure.  Fact Nos. 2-9.  Grogan was required to adhere to Air Force regulations governing BAC while flying; he was bound to follow those regulations and subject to punishment under the UCMJ for failure to do so.  Fact No. 11; 10 U.S.C. § 892 (2012).  These considerations support application of the *Feres* doctrine to his claim against the United States.

### 4. Plaintiff Grogan Had Access to Medical Treatment and Benefits Because of His Military Status.

Grogan had access to non-judicial remedies for his injury.  In *Feres*, the Supreme Court noted that the FTCA was designed to offer those injured by the government a means to be made whole.  340 U.S. at 139-40.  The Court acknowledged that military members, as a benefit of their service, have access to health care, insurance, and disability compensation if they are injured while on active duty.  *See id.* at 144-45.  This access to benefits provides adequate redress for injury, and is a significant reason why the Court decided the *Feres* plaintiffs could not pursue a civil remedy against the United States.  *Id.*  The same is true here.  As an active duty Air Force officer, Grogan had access to the medical care available to all active duty military personnel.  As part of the Department of Defense health care program, Grogan had access to medical care through on-base

medical treatment facilities, and also from civilian providers through TRICARE, the civilian health care component of the military health system. *See* 32 C.F.R. § 199.17(a). TRICARE is applicable to all of the uniformed services. 32 C.F.R. § 199.17(a)(3). Active duty members of the military are automatically enrolled in TRICARE Prime. 32 C.F.R. § 199.17(a)(6)(i)(A) & (ii)(A). As in *Feres*, Grogan's access to healthcare and financial compensation available to injured, active-duty military members weigh in favor of barring his claim.

### 5. A Review of Case Law Supports the Conclusion that the *Feres* Bar Applies to Grogan's Claim.

A case law review reveals compelling similarities among this case and others involving *Feres*-barred claims brought by military members against the United States. In *Woodside v. United States*, 606 F.2d 134 (6th Cir. 1979), an Air Force officer taking flying lessons while on leave died when his plane crashed. The Air Force flying club at Hickam Field, Hawaii, owned the plane. The deceased had been taking his lessons from a civilian instructor under contract with the flying club. *Id.* at 136-37. Although the Sixth Circuit applied a slightly different analysis of the *Feres* doctrine, it held that the claim was barred, relying on the facts that the injury occurred in a military aircraft, the deceased flying club member was on active duty at the time of the injury, and an activity provided by the military or with substantial military involvement is deemed incident to military service. *See id.* at 141-42; *see also Costo*, 248 F.3d at 868 ("[I]t has long been recognized – in our court, at least – that military-sponsored activities fall within the *Feres* doctrine, regardless of whether they are related to military duties."). The same facts are true in Grogan's case.

*Dall v. United States*, 42 F. Supp. 2d 1275 (M.D. Fla. 1998), is another apposite case. There, a Navy officer was badly burned when his personal aircraft, which had been repaired at a military-operated flying club at Naval Air Station Jacksonville in Florida, crashed at a civilian airstrip. The plaintiff officer sued the United States, alleging that the club was negligent in

MEMORANDUM SUPPORTING
MOTION TO DISMISS                -14-

repairing the aircraft and this caused the accident. *Id.* at 1277-78. The claim was barred because the plaintiff was on active duty when the accident occurred, the military operated the repair facility, the plaintiff had access to the repair facility because of his military status, and the alleged negligent acts occurred on a military base. *See id.* at 1283. Grogan's case presents a similar scenario, with Grogan piloting a plane for purposes directly related to BAC's mission when the accident occurred, Fact Nos. 17-21, which further supports application of the *Feres* doctrine.

## III.     CONCLUSION

The four-factor analysis for applying the *Feres* doctrine requires dismissal. First, Grogan's activity at the time of the accident was military in character. Second, the alleged negligent maintenance occurred on a military base and Grogan's claim questions military decisions. Third, Grogan was on active duty and subject to military supervision and discipline. Fourth, Grogan was eligible for military benefits for his alleged injury. For these reasons, Grogan's claim is barred under *Feres* and dismissal under Fed. R. Civ. P. 12(b)(1) is appropriate.

DATED:  November 17, 2017

Respectfully submitted,

/s/ *Debra D. Fowler*
DEBRA D FOWLER
Senior Aviation Counsel
debra.fowler@usdoj.gov
Torts Branch, Civil Division
U.S. Department of Justice
Post Office Box 14271
Washington, DC 20044-4271
Phone: (202) 616-4025
Fax:    (202) 616-4002

Attorneys for the United States

**PROOF OF SERVICE**
*Grogan v. United States of America*
**Case No. 2:15-CV-00562-JAM-KJN**

I certify that on November 17, 2017, the foregoing was filed using the Court's CM/ECF system that will send electronic notification of the filing to counsel of record.

/s/ *Debra D. Fowler*
Attorney for Defendant United States of America